UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GARY A. MANNING, | : | Case No. 1:07-cv-951 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") at 59-61, 226) (ALJ's decision).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

**I.**

On March 3, 2004, Plaintiff submitted a claim for SSI, and on March 8, 2004, Plaintiff filed an application for DIB.[2] (Tr. 59-61, 226). Plaintiff alleges that he became disabled on September 30, 2003 due to depression, a learning disability, and memory and hearing problems. (Tr. 17).

Plaintiff's applications were denied at the initial and reconsideration levels, and a request for a hearing before the ALJ was timely filed. (Tr. 37, 43, 229, 234). A hearing was held on November 14, 2006, at which Plaintiff appeared with counsel and testified. (Tr. 16). A vocational expert, Janice Bending, was also present and testified. (*Id.*)

On December 12, 2006, the ALJ found Plaintiff was not disabled. (Tr. 13-23). The ALJ's decision became final when the Appeals Council denied a request for review. (Tr. 4).

Plaintiff is 55 years old with a sixth grade education. (Tr. 154). Plaintiff cannot read or write, except for his name. (Tr. 248-49). His past work experience includes employment as an industrial cleaner, a pressure cleaner, a nursing home laundry worker, and a painter. (Tr. 17).

---

[2] Plaintiff is insured for DIB through December 31, 2008. (Tr. 62).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the nondisablity requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's adjustment disorder, learning disability, and reading disorder are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c). He does not suffer from any other severe impairment(s).

4. The claimant's impairments (singly or in combination) do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of this decision.

6. The claimant has the residual functional capacity to perform simple, routine, repetitive tasks. Any job he could perform must require no reading or writing. The claimant can adjust to simple changes in a work setting/routine.

7. The claimant's past relevant work as pressure cleaner, a painter, a nursing home laundry worker, and an industrial cleaner did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8. The claimant's impairments do not prevent the claimant from performing his past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. 22-23).

In sum, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations, and was therefore not entitled to a period of disability, DIB, or SSI. (Tr. 23).

On appeal, Plaintiff argues that: (1) the ALJ erred by arbitrarily and capriciously failing to find that Plaintiff was disabled by virtue of meeting or equaling the criteria of Listing 12.05B, C, and/or D; (2) the ALJ erred as a matter of law in failing to accord credibility to the statements of Plaintiff's family in explanation of his job performance; (3) the ALJ erred as a matter of law in accepting the opinions of non-examining state agency psychologists from SSA over the SSA examining/testing psychologist as corroborated by other examining/testing psychologists; and (4) the ALJ erred as a matter of law in her selective adoption of characteristics for her RFC determination based on the "great weight" given to Dr. Kenford's report. Upon careful review, the undersigned finds Plaintiff's first, third and fourth assignments of error to be well-taken and dispositive, and, accordingly, hereby recommends that judgment be entered in favor of Plaintiff awarding benefits.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that

finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

For his first assignment of error, Plaintiff asserts that the ALJ erred by arbitrarily and capriciously failing to find that Plaintiff was disabled by virtue of meeting or equaling the criteria of Listing 12.05B, C, and/or D.

To meet Listing 12.05, Plaintiff must establish, by medically acceptable clinical and laboratory diagnostic techniques, that his impairment meets the diagnostic description of mental retardation, as stated in the introductory paragraph of the Listing, as well as the requirements of paragraph B, C or D of Listing 12.05. *See* Listing, § 12.00A; 20 C.F.R.

§§ 404.1525(c), 416.925(c); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). The introductory paragraph of Listing 12.05 states, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." Listing § 12.05A.[3]

To meet Paragraph B of Listing 12.05, Plaintiff must also establish that he has a "valid verbal, performance, or full scale IQ of 59 or less." Listing § 12.05B.

To meet Paragraph C of Listing 12.05, in addition to meeting the mental retardation criteria in the Listing's introductory paragraph, Plaintiff must establish that he has a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Listing § 12.05C.

To meet Paragraph D of Listing 12.05, Plaintiff must establish, in addition to the diagnostic criteria for mental retardation, a valid IQ of 60 through 70, resulting in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Listings, §12.05D.

---

[3] In addition to valid IQ scores of 70 or below, DSM-IV-TR lists as a diagnostic criterion "concurrent deficits or impairments in present adaptive functioning" in two or more of the following areas: "communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." DSM-IV-TR at 49.

Plaintiff's IQ score of 58 is clearly in the range for Listings § 12.05B, C, D. (Tr. 157). Dr. Susan Kenford diagnosed Plaintiff with mental retardation, adjustment disorder with anxious and depressed mood, a reading disorder, and a GAF score of 30[4] with symptom severity of 50, indicating serious symptoms. (Tr. 19). Nevertheless, the ALJ found that Plaintiff did not meet any of the Listings.

First, the ALJ found that Plaintiff did not satisfy Listing 12.05A/B -- the diagnostic description of mental retardation -- because he did not produce a qualifying IQ score before age 22. The ALJ's finding is clear error. While the claimant *may* use a qualifying IQ score before the age of 22 to demonstrate that his subaverage intellectual functioning initially manifested during his developmental period, *see Daniels v. Comm'r of Soc. Sec.,* 70 F. App'x 868, 873 (6th Cir. 2003), a claimant is by no means required to produce an IQ score obtained prior to age 22. Thus, the ALJ erred to the extent she determined that the claimant must produce such evidence.

Additionally, the ALJ alleges that Plaintiff does not exhibit the deficits in adaptive functioning required to document mental retardation.[5] In support of this finding, the ALJ claims that Plaintiff's earnings over the last several years[6] were at a level that constituted

---

[4] A GAF (Global Assessment of Functioning) score of 30 indicates serious impairment in communications or judgment or inability to function in almost all areas. Diagnostic & Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV-TR) at 34.

[5] Dr. Kenford's report references valid WAIS IQ scores of VIQ-58, PIQ-58 and FSIQ-59 (Tr. 157) and makes a clear diagnosis of mental retardation (Tr. 158-59).

[6] Plaintiff's yearly earnings exceeded $20,000 from 1994 through 2001. (Tr. 63-66). Plaintiff earned $4,093.40 in 2002 and $9,464 in 2003. (Tr. 66, 93, 98).

"substantial gainful activity," 20 C.F.R. § 404.1534(B), prohibiting Plaintiff from meeting Listing 12.05. However, the ALJ neglects to address the circumstances of Plaintiff's employment.

"A mentally handicapped individual who performs <u>simple tasks subject to close and continuous supervision</u> would not have demonstrated ability to engage in substantial gainful activity solely on the basis of the rate of his remuneration for such activity." 20 C.F.R. § 404.1534(a) (emphasis added). In her decision, the ALJ does not reference § 404.1534(a) or make any findings of fact relevant to the determination of whether the work Plaintiff performed was "substantial gainful activity" or whether it was "closely and continuously supervised work" by a mentally handicapped person which is <u>not</u> "substantial gainful activity." *See e.g., Boyes v. Sec'y of Health & Human Servs.,* 46 F.3d 510, 512 (6th Cir. 1994) (concluding that claimant's past relevant work was performed under "special circumstances" - lower than typical productivity and special transportation needs - and did not constitute substantial gainful activity).

20 CFR Section 404.1573(c) is helpful in considering this issue, stating in relevant part:

> "(c) If your work is done under special conditions. The work you are doing may be done under special conditions that take into account your impairment . . . If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work does not show that you are able to do substantial gainful activity . . . Examples of the

special conditions that may relate to your impairment include, but are not limited to, situations in which –

(1) You required and received *special assistance* from other employees in performing your work;

(2) You were allowed to work *irregular hours* or take frequent rest periods;

(3) You were provided with special equipment or were *assigned work especially suited to your impairment;*

(4) You were able to work only because of *specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work*; ...

(6) You were given the opportunity to work despite your impairment because of *family relationship*, past association with your employer, or your employer's concern for your welfare."

(Emphasis added).

Despite the fact that the ALJ ignored evidence that Plaintiff was only capable of working in "highly supported situations" procured by relatives, the record is replete with examples.[7] (Tr. 80-84). For example, from 1975-1982, Plaintiff's job at Carleton Machine Tool Co. was to sand and prime radial drill cabinets for painting, a *job procured by his cousin* which he performed until they closed. (Tr. 80-81). In 1984-85, he was *employed by his sister* folding toy tissue boxes at home. (Tr. 80-81). From 1985-89, Plaintiff worked at Champion Industrial Cleaners working in different factories cleaning

---

[7] Plaintiff's wife describes his situation in her Remarks to the Disability Report-Appeal dated August, 20, 2004. Plaintiff "[h]as always been totally dependent on someone else to take care of paying bills, getting back and forth to work, grocery shopping, Dr. Appt's, picking up meds and taking them correctly, reading his mail for him, reading instructions for assembly of certain items." (Tr. 142-143).

duct work, filters, tanks, etc. at *odd hours, a job secured by a friend*. (Tr. 80-81). Similarly, *others completed paperwork for Plaintiff* to secure simple heavy labor jobs at Cast Fab Technologies. (Tr. 80). Plaintiff had to quit his job at Loveland Health Care Center because his *wife could no longer take him to work* and *his inability to read and write caused problems*. (Tr. 80-81). Plaintiff got a part-time job at Kroger's stocking shelves, but was terminated because they would not provide a written schedule and Plaintiff could not remember his schedule. (Tr. 84). This evidence demonstrates that Plaintiff is unable to function in the absence of a "highly supportive" work environment.

The ALJ erred in failing to consider or discuss the special circumstances surrounding Plaintiff's past employment in determining whether claimant met the eligibility criteria for disability.

Additionally, the ALJ claims that Plaintiff's ability to perform ordinary activities of self care are evidence that he lacks "deficits in adaptive functioning." (Doc 10). The ALJ points out that Plaintiff's activities include: washing and combing his hair, brushing his teeth, dressing, washing dishes, vacuuming, cooking a simple meal, and cleaning house. (Tr. 130-33, 156-57). Plaintiff also maintained relationships with family, friends, neighbors, and church members and engaged in leisure activities, including fishing, watching television, and wood carving. (Tr.155-57, 268).

However, the fact that Plaintiff is able to perform mundane activities does not negate a diagnosis of mental retardation which is supported by valid WAIS-III test results. For example, in *Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268 (6th Cir. 1991), the Court found that despite plaintiff's ability to use public transit, possess a driver's license, visit friends, do his own laundry, clean his room, and record mileage and hours as a truck driver, such facts were inconsistent with a valid IQ test of 68 and insufficient to negate a mental retardation diagnosis. Accordingly, the ALJ's finding that Plaintiff does not meet or equal Listing 12.05 A/B is not supported by substantial evidence.

Second, the ALJ found that Plaintiff did not meet or equal Listing 12.05C because there was insufficient evidence in the record that Plaintiff's back pain is a "severe impairment." The record indicates that Plaintiff saw a chiropractor on three occasions in 2004. (Tr. 178-180). The treatment notes state that "treatment appeared effective" but that Plaintiff "never returned." (Tr. 179). Two years later, the chiropractor diagnosed Plaintiff with herniated discs and foraminal stenosis. (Tr. 221-225). These limited records are insufficient to support a finding that Plaintiff has severe back pain. Accordingly, the ALJ's finding that Plaintiff does not meet Listing 12.05C is supported by substantial evidence.

Third, the ALJ found that Plaintiff did not satisfy Listing 12.05D.  Specifically, the ALJ disregarded extensive evidence indicating that Plaintiff's activities and social functioning were restricted.  For example, Plaintiff cannot master simple tasks of daily living such as money management, cooking, or the ability to shop for himself.  (Tr. 159).  Additionally, his ability to get along with others including coworkers and supervisors is variable and his problems with comprehending information make it difficult for him to interact with others.  (Tr. 159).  His formal concentration and attention are significantly below expected levels.  (Tr. 159).  Accordingly, the record contains sufficient evidence that Plaintiff has (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; and (3) marked difficulties in maintaining concentration and persistence.  Therefore, the ALJ's finding that Plaintiff does not meet Listing 12.05D is not supported by substantial evidence.

The ALJ ignores evidence which shows that Plaintiff's medical condition meets or equals the criteria of Listing 12.05B (mental retardation + valid IQ score of 59 or less), and Listing 12.05D (valid IQ of 60-70 with 2 marked restrictions – marked restriction of activities of daily living, marked difficulties in social functioning, and marked difficulties in maintaining concentration, persistence or pace).

Accordingly, the ALJ's finding is not supported by substantial evidence.  The undersigned finds that Plaintiff meets the criteria of Listing 12.05.

**B.**

Next, Plaintiff maintains that the ALJ erred as a matter of law in accepting the opinions of non-examining state agency psychologists over the examining/testing psychologist as corroborated by another examining/testing psychologist.

The ALJ erred in accepting the opinions of the non-examining state agency psychologists, Drs. Williams and Pawlarczyk, over the examining/testing psychologists, Drs. Kenford and Tureen. Ordinarily, the opinions of non-examining physicians do not rise to the status of "substantial evidence" when contradicted by the opinions of examining physicians supported by *objective* evidence. *Mefford v. Gardner*, 383 F.2d 748 (6th Cir. 1967); *Sherrill v. Sec'y*, 757 F.2d 803 (6th Cir. 1985). Here, Dr. Kenford's diagnosis of mental retardation was *objectively* supported by three IQ scores of 59 or less and a RBANS[8] score below the first percentile for the general population. (Tr. 217). Deficits in adaptive functioning as described in Section II.A and a diagnosis of mental retardation make it clear that Listings 12.05A/B and D were met or equaled.

State agency psychologists, Joan P. Williams, Ph.D., and Douglas J. Pawlarczyk, Ph.D., reviewed the evidence on July 12, 2004 and October 24, 2004. (Tr. 162-77). They opined that Plaintiff's earnings were inconsistent with Dr. Kenford's diagnosis of mild mental retardation. (Tr. 177). They also opined that Plaintiff's restriction of activities of daily living and difficulties in maintaining social functioning were at most mild, that difficulties in maintaining concentration, persistence, or pace were mild to moderate, and that there were no decompensation episodes. (Tr. 172). They concluded that Plaintiff

---

[8] RBANS is the Repeatable Battery for the Assessment of Neuropsychological Status.

had the mental capacity to understand and follow simple instructions and implement simple tasks, make simple work decisions, comport himself adequately for simple, superficial social exchanges in a work setting, and adjust to simple changes in work routine. (Tr. 177). These findings are contrary to the record.

Based on her evaluation, Dr. Kenford, the examining psychologist, found that Plaintiff had difficulty understanding instructions and appeared nervous during testing, but he had average pace and put forth good effort. (Tr. 154). He had difficulty gathering words to communicate clearly, many of his responses were vague, his sentence structure was simplistic, and he could not handle abstractions. (Tr. 155). He was unable to add, subtract, or multiply single digit numbers, and he could not recite the alphabet, but he could count forward and backward from 1 to 20 and spell his first name. (Tr. 156). Dr. Kenford concluded that Plaintiff "cannot take any job that would require written language or comprehension." (Tr. 159). Additionally, she found that Plaintiff's ability to get along with coworkers and supervisors would be varied, and his comprehension problems would make interaction difficult, causing frustration for his coworkers. (Tr. 159). Moreover, Dr. Kenford diagnosed Plaintiff with mental retardation with serious symptoms. (Tr. 153).

Dr. Tureen, who also examined Plaintiff, found that he could recognize some letters but could not recite the alphabet or recognize simple words. (Tr. 216-17). Plaintiff could write his name, but he could not spell it, indicating that he could learn the motor activity but not the cognitive component. (Tr. 217). Moreover, Plaintiff scored below the first

percentile for the general population on the RBANS test. (Tr. 217).

Ignoring these findings, the ALJ adopts the "functional capacity assessment" of the non-examining psychologists, Williams and Pawlarczyk, who never examined Plaintiff and appear to rely heavily on unsubstantiated data. (Tr. 177). For example, the non-examining psychologists considered the following facts in determining Plaintiff's RFC: "Clt reports hx multiple past wok (sic) activities involving hazardous equipment and circumstances including hx as crane operator and forklift driver[9] . . . clt reports hx of work operating hazardous equipment." (Tr. 177). These facts are simply false.

The ALJ also focuses on the fact that Dr. Tureen referred Plaintiff to the Ohio Bureau of Vocational Rehabilitation "to see what job services they may have available." However, Dr. Tureen's referral is not a determination that Plaintiff can work, or even that the office could find suitable work. (Tr. 217-218). It is notable that Dr. Tureen does not name any potential jobs that Plaintiff could perform. Additionally, Dr. Tureen assigned Plaintiff a GAF score of 30, which denotes "behavior considerably influenced by delusions or hallucinations, or serious impairment in communication or judgment, or inability to function in almost all areas." DSM-IV-TR at 34.

---

[9] Plaintiff never obtained a drivers license because he cannot read or understand the test booklet. (Tr. 248).

Accordingly, the undersigned finds that the ALJ improperly weighed the medical evidence by failing to give controlling weight to the examining physicians. The consultative physician's assessment, based in part on improper factual findings, does not constitute *substantial evidence* so as to overcome the findings of the examining physicians.

**C.**

For her final assignment of error, Plaintiff maintains that the ALJ erred as a matter of law in her selective adoption of characteristics for her RFC determination based on the "great weight" given to Dr. Kenford's report.

The ALJ's RFC is defective, incomplete, and erroneous because it fails to account for or include the following limitations:

Dr. Kenford's Report[10]

1. Claimant is a very concrete thinker who has *limited insight*. (Tr. 158)
2. Vulnerable to emotional upset in the face of stress or pressure. (Tr. 158)
3. He *has not been able to master some tasks of daily living* such as money management and shopping and cooking . . . claimant has extremely low skills . . . claimant's inability to use language is striking . . . greater facility with visual information. (Tr. 159).
4. He cannot take any job that would require written language or *comprehension* (Tr. 159)
5. Ability to get along with others including coworkers and supervisors is variable . . . his problems with comprehending information and processing information make it somewhat difficult to interact with him on a sustained basis He would prove frustrating to coworkers because of his lack of ability to *comprehend.* (Tr. 159).

---

[10] Dr. Kenford evaluated Plaintiff on April 14, 2004. (Tr. 153-60).

6. Claimant's ability to maintain attention, concentration, and persistence is variable. His persistence is good. His formal concentration and attention are significantly below expected levels. (Tr. 159)
7. Claimant cannot do any job that would require written *or spoken* language. He needs to *learn by seeing*. Claimant does not have the intellect to work with abstractions. (Tr. 159)
8. Claimant *does not benefit from reminders within the auditory realm.* (Tr. 158)
9. His psychomotor integration and ability to learn a novel task was very poor/deficient. (Tr. 157).
10. Has never driven an automobile. (Tr. 153).

(Emphasis added).

Dr. Tureen's Report:[11]

1. Some letter recognition, but he does not recognize all of the letters of the alphabet. (Tr. 217)
2. He has learned to write his name, but actually he is unable to spell it spontaneously . . . he could learn the motor activity, but not the cognitive component. (Tr. 217)
4. Auditory learning…immediate *memory is definitely impaired*, more so where he tries to deal with organizing material . . . he does better learning a list of random words, than in trying to learn an integrated paragraph of meaningful material. Retention of this information over time with interrupting activity is again in the severely impaired range. (Tr. 217).
5. If after nine months of Mr. Manning working to develop some language skills results in the current level, it necessarily begs the question as to whether or not this is a profitable enterprise. (Tr. 217). On the basis of the foregoing omissions, it is submitted that the ALJ's hypothetical is erroneous and does not reflect the impairments shown by the evidence.

(Emphasis added).

Despite these findings, the ALJ concluded that Plaintiff "had no difficulty adapting successfully to a work environment and was able to interact with others is a variety of work settings and concentrate well enough to earn substantial amounts of money

---

[11] Dr. Tureen evaluated Plaintiff on July 7, 2005. (Tr. 216).

-17-

consistently for years . . . He is not mentally retarded."

In the foregoing, the ALJ clearly substitutes her non-expert assessment for the assessments of Dr. Tureen and Dr. Kenford, to whose "opinion" the ALJ assigns "great weight." (Tr. 19). The ALJ ignores substantial evidence that Plaintiff's ability to function is severely limited.

Accordingly, the RFC assigned by the ALJ does not accurately reflect Plaintiff's impairments and, therefore, is not supported by substantial evidence.

## III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir.

1985).  Such is the case here.

Here proof of disability is overwhelming and remand will serve no purpose other than delay.  As fully recited herein, in view of Plaintiff's assertions of disability, the extensive medical record of evidence of disability, and the credible and controlling findings and opinions of Plaintiff's examining physicians, proof of disability is overwhelming.

**IV.**

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to supplemental security income or disability insurance benefits beginning on September 30, 2003, be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter be **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**


Date:  December 19, 2008            s/ Timothy S. Black
                                    Timothy S. Black
                                    United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GARY A. MANNING, | : | Case No. 1:07-cv-951 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).